

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAURICE CROWDER, | )<br>) |
| Petitioner, | ) Civil Action No. 10 C 7740<br>) Criminal Action No. 06 CR 102-2<br>) |
| | ) Honorable Charles R. Norgle<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is Petitioner Maurice Crowder's ("Crowder") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Crowder challenges his sentence for conspiracy to possess with intent to distribute a controlled substance and attempt to possess a controlled substance, in violation of 21 U.S.C. § 846. For the following reasons, the motion is denied.

## I. BACKGROUND

In or around January of 2006, Crowder and his co-defendant, Charome Watkins ("Watkins"), traveled back and forth from Chicago, Illinois and Tucson, Arizona, purportedly to transport and pick up various dogs for sale. On January 24, 2006, Crowder and Watkins boarded an airplane in Chicago bound for Tucson. They attracted the attention of Drug Enforcement Administration ("DEA") Agents by paying for their tickets in cash and not checking any luggage. While on a scheduled layover at the Dallas/Fort-Worth Airport, Crowder and Watkins were approached by two DEA Agents. Crowder and Watkins consented to an interview wherein Crowder revealed that he was in possession of $46,000 in cash. Crowder asserted that he had obtained the money in a

recent real estate transaction. Crowder also consented to allow a drug detecting dog to sniff the money, and the dog did not alert to the cash. Crowder and Watkins were thereafter allowed to continue to Tucson.

On January 27, 2006, the title to a 1998 Ford Mustang convertible was transferred to Watkins's mother in Harvey, Illinois. Also that day, a woman called and arranged for a truck driver in Tucson to transport a vehicle to Harvey, Illinois. The woman asked the driver to meet with her purported husband to pick up the vehicle. At approximately 1:30 p.m. on that same date, the truck driver arrived at the predetermined meeting point. Shortly thereafter, a Hispanic male arrived driving the vehicle to be transferred, a 1998 Ford Mustang convertible. Several minutes later, another Hispanic male arrived driving another vehicle. The truck driver inventoried the Mustang to look for existing damage, and noted that various parts were missing from the exterior. The truck driver then filled out a Bill of Lading, and gave a pink copy to one of the Hispanic males, who then left the area quickly. The truck driver loaded the Mustang onto a multi-vehicle transport trailer and departed.

On February 3, 2006, during his trip to the Chicago area, the truck driver received numerous telephone calls about the location of a vehicle he was carrying—not the Mustang. The driver became concerned about the calls and contacted the Missouri Highway Patrol ("MHP"). The MHP instructed the driver to pull over at the next weigh station, where he was met by MHP officers. The driver consented to a search of the vehicle that was the subject of the calls. The search of that vehicle resulted in the seizure of controlled substances and a controlled delivery unrelated to Crowder and Watkins's

criminal case.[1] After completing their search, the officers asked the driver if any other vehicles he was transporting had raised his suspicions. The driver then pointed to the Mustang, and explained the suspicious circumstances relating to its drop-off—that two Hispanic males signed the Bill of Lading and immediately left the area, without waiting for the driver to inspect for pre-existing damage. The driver also explained that the Mustang was missing several parts from its exterior.

The officers visually inspected the Mustang, and noticed that the back seat was not properly attached to the interior of the car, and that screws were resting on the front and back seats. The truck driver consented to a search of the Mustang. Upon entering the Mustang, the officers noticed that the odor of marijuana permeated the interior. A search of the Mustang revealed approximately eighty pounds of marijuana and two kilograms of cocaine hidden in compartments below and behind the back seat. The MHP officers contacted the DEA, and the DEA arranged for a controlled delivery of the Mustang and its contents.

During the driver's trip to Harvey, Illinois, an individual, later identified as Watkins, called the driver numerous times to inquire as to the anticipated delivery time for the Mustang.[2] They agreed to meet on February 7, 2006, and the DEA set up surveillance in the scheduled delivery area. The driver was also equipped with an audio recording device. At approximately 4:45 p.m. on February 7, 2006, a Ford Taurus driven

---

[1] This vehicle was subjected to a drug detecting dog sniff. During the grand jury and pretrial proceedings, the DEA believed that a dog also sniffed and alerted to drugs in the Mustang, but prior to trial it was discovered that a dog sniff of the Mustang did not occur.

[2] The government originally believed that it was Crowder's voice in the telephone recordings with the driver, but it was later revealed that it was the voice of Watkins, his co-defendant.

3

by Crowder, with Watkins in the passenger seat, approached the truck near the delivery area.

Crowder then presented the truck driver with a pink copy of the Bill of Lading—the same copy that the driver had given to the Hispanic males who dropped off the Mustang in Tucson. Watkins then signed for the delivery of the Mustang and handed the paperwork to Crowder. Crowder gave Watkins cash which Watkins used to pay the driver his delivery fee. Watkins then drove away in the Mustang, while Crowder followed in the Taurus. Crowder and Watkins were arrested shortly thereafter.

On May 18, 2006, Crowder and Watkins were indicted for attempt to possess and conspiracy to possess eighty pounds of marijuana and approximately two kilograms of cocaine. Watkins eventually changed his plea to guilty on March 27, 2007, and agreed to cooperate with the government. However, Watkins was killed "five days before Crowder was to go to trial in August of 2007." United States v. Crowder, 588 F.3d 929, 931 n.1 (7th Cir. 2009). Following a three day bench trial in November of 2007, Crowder was convicted of attempt to possess and conspiracy to possess a controlled substance, pursuant to 21 U.S.C. § 846 on February 22, 2008. On August 28, 2008, he was sentenced to 240 months on each count with the sentences to run concurrently. Crowder's appeal was denied on December 7, 2009.

Crowder now seeks collateral relief from his sentence, arguing: (1) that he received ineffective assistance of trial counsel, Pet.'s Mot. to Vacate, Set Aside or Correct Sentence, Attached Pages Listing and Explaining the Grounds for the Mot. 8 [hereinafter Grounds for Mot.]; (2) that the government presented false and/or misleading facts to the grand jury, id. at 1; (3) that a government witness presented false and/or

4

misleading testimony to the grand jury, id. at 3; (4) that his constitutional rights were violated "when he was compelled to go to trial on a completely false[ly] procured Indictment," id. at 6; (5) that the "conviction was obtained by the use of a Brady [v. Maryland, 373 U.S. 83 (1963)] violation," id. at 7; and (6) that his pre-trial motion to suppress was improperly denied, id. at 10. Crowder's § 2255 motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. This is an extraordinary remedy because a petitioner seeking § 2255 relief has already "had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Specifically, section 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If a petitioner is able to successfully assert the aforementioned grounds, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

Post-conviction relief under § 2255, however, "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which

inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). In deciding a § 2255 motion for post-conviction relief, "evidence and inferences drawn from it are viewed in a light most favorable to the government." United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000).

"A § 2255 petition is neither a recapitulation nor a substitute for a direct appeal." McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (internal quotation marks and citation omitted); see also United States v. Fleming, 676 F.3d 621, 625 (7th Cir. 2012). A petitioner is barred from raising constitutional issues in a § 2255 motion if those issues could have been challenged and decided on direct appeal unless a petitioner can show both (1) "good cause for failing to raise the issue" and (2) "actual prejudice." Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002). In addition, a petitioner is barred from re-arguing claims that were raised on direct appeal "absent a showing of changed circumstances." Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994).

## B. Ineffective Assistance of Trial Counsel

Crowder properly brings a claim alleging ineffective assistance of trial counsel. "The right to counsel is the right to effective assistance of counsel." Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012). To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Because the Strickland test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice

6

"without ever considering the question of counsel's actual performance," and vise versa. United States v. Taylor, 569 F.3d 742, 748 (7th Cir. 2009).

In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In order to establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (quoting Strickland, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Sussman v. Jenkins, 636 F.3d 329, 349 (7th Cir. 2011) (quoting Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal quotation marks and citation omitted)). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" Atkins v. Zenk, 667 F.3d 939, 944-45 (7th Cir. 2012) (quoting Strickland, 466 U.S. at 689) (alteration in original).

Crowder first alleges that he was deprived of effective assistance of counsel when his attorney was denied the right to effectively cross-examine DEA Agent Fernando Cervantes ("Agent Cervantes") regarding his false statements before the grand jury. "[A] defendant has a burden of supplying sufficiently precise information, of the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information . . . would have produced a different result." United States v. Rodriguez, 53 F.3d 1439, 1449 (7th Cir. 1995) (internal quotation marks and

citations omitted). Crowder fails to allege deficient performance or prejudice under Strickland, effectively waiving his claim. See United States v. Lamzotti, 205 F.3d 951, 957 (7th Cir. 2000) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). In any event, Crowder's attempt to attack the grand jury testimony of DEA Agent Cervantes—which contained some unknowing, but immaterial, misstatements—is without merit. Agent Cervantes was not called as a witness at trial, and any deficiencies were cured before the trial began. Therefore, no prejudice resulted from his attorney's failure to cross-examine someone who was not a witness at trial. Accordingly, Crowder's Strickland claim on this basis fails.

Crowder also alleges that his attorney provided ineffective assistance of counsel because he did not have enough time to prepare for trial. Specifically, Crowder claims that his attorney's failure to win a continuance constitutes ineffective assistance. The motion for a continuance was based on alleged Brady material that the government turned over to Crowder the day before the trial. Because the government never used the evidence (post-arrest inculpatory statements and behavior) at trial, the Court finds that it did not prejudice the defense as defined by Strickland and its progeny.

In addition, the government argues that defense counsel's performance as it relates to the motion for a continuance was not deficient because it constituted sound trial strategy. See Gentry v. Sevier, 597 F.3d 838, 851 (7th Cir. 2010) ("[T]rial strategies are generally left to the discretion of counsel and second-guessing strategic decisions in hindsight will generally not be a meritorious basis to find ineffective assistance of counsel."). In seeking the continuance, defense counsel declined to explain the substance

of the evidence at issue or how it would prejudice the Court as the finder of fact at the bench trial. As a result of counsel's decision not to explain the basis of his motion to the Court, it was denied. The denial was affirmed on direct appeal. Crowder, 588 F.3d at 937 ("Because he cannot show that he suffered actual prejudice from the district court's denial of a continuance, Crowder's appeal on this issue is denied."). The Court agrees that this constituted a reasonable trial strategy that did not rise to the level of objectively unreasonable or deficient performance. Because Crowder cannot show deficient performance or prejudice as a result of the alleged ineffective assistance of counsel, the Court rejects his claim.

## C. Claims Not Raised on Direct Appeal

The Court notes that several of Crowder's arguments could have been raised on direct appeal, but were not. It is well established that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003); see also Galbraith, 313 F.3d at 1006. Crowder alleges that he attempted to raise these issues on appeal, but his counsel refused to assert them,[3] and by the time he tried to make the arguments himself, the case was returned to this Court. Crowder asserts that this constitutes good cause for waiting to bring these arguments in the instant motion. The Court disagrees. Nevertheless, in an abundance of caution, the Court addresses the merits of Crowder's arguments.

---

[3] The Court notes that Crowder does not bring a claim for ineffective assistance of appellate counsel for failure to raise these arguments on appeal. The Court declines to make his argument for him, and it is therefore waived. United States v. Jones, 208 F. Supp. 2d 929, 934 (N.D. Ill. 2002) (stating that while pro se pleadings are to be liberally construed, courts are not required to construct a litigant's argument for him).

9

## 1. *False Testimony Before the Grand Jury and Falsely Procured Indictment*

Crowder alleges that his indictment was falsely procured because the grand jury was prejudiced by false statements from the government and the government's witness, DEA Agent Cervantes. A "'petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted.'" United States v. Knight, 342 F.3d 697, 713 (7th Cir. 2003) (quoting United States v. Mechanik, 475 U.S. 66, 67 (1986)). "Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." United States v. Vincent, 416 F.3d 593, 602 (7th Cir. 2005) (quoting Mechanik, 475 U.S. at 70); see also United States v. Morgan, 384 F.3d 439, 443 (7th Cir. 2004) (rejecting the argument of possible error in the grand jury proceedings as harmless following a petit jury's verdict of guilty where defendant alleged that the government used perjured testimony to obtain the indictment).

Crowder alleges that the grand jury was told that it was his voice on telephone recordings captured by the DEA, when in fact, it was not. Also, Crowder alleges that Agent Cervantes told the grand jury that a police canine alerted to drugs in his vehicle, when a dog sniff of the Mustang never occurred. Crowder avers that both the government and the witness perjured themselves before the grand jury, resulting in an improper indictment. The Court disagrees.

The government correctly argues that the factual errors were minor, and in the face of other overwhelming evidence (a video of the controlled illegal narcotics transaction and testimony from co-Defendant, Charome Watkins), the errors did not

affect or corrupt the finding of the grand jury. Furthermore, the Court notes that the government informed the Court and Crowder when it discovered the factual errors in the information presented to the grand jury and to the Court during pretrial proceedings. Indeed, the facts were corrected prior to the Court's finding of guilt beyond a reasonable doubt, making any error before the grand jury harmless. See Vincent, 416 F.3d at 602. Accordingly, to the extent that these claims are not procedurally defaulted, the Court rejects Crowder's theories of relief relating to the grand jury proceedings.

### 2. *Brady Violation*

Next, Crowder argues that his conviction was improper due to a Brady violation. "A Brady violation occurs when the prosecution suppresses evidence favorable to the defense and the evidence was material to an issue at trial." United States v. Mota, 685 F.3d 644, 648 (7th Cir. 2012); see also Smith v. Cain, 132 S. Ct. 627, 630 (2012). "But not all suppressed evidence that has some tendency to exculpate or impeach is material under Brady, and relief may be granted only if introducing the evidence would have cast 'the whole case in such a different light as to undermine confidence in the verdict.'" Jardine v. Dittmann, 658 F.3d 772, 776-77 (7th Cir. 2011) (quoting Strickler v. Greene, 527 U.S. 263, 290 (1999)).

Here, Crowder alleges that a Brady violation occurred when the government failed to turn over "impeached [sic] evidence, phone records, and narrative reports" until the day before his trial. Mem. in Support of Pet.'s § 2255 Pet. 8. The alleged impeachment evidence refers to the transcript of DEA Agent Cervantes's grand jury testimony. The government argues that it was not required to turn over the transcript because it did not call Agent Cervantes to testify at trial. See 18 U.S.C. § 3500(a). Nor

11

could Crowder have called Agent Cervantes to the stand merely to impeach him with his grand jury testimony. See United States v. Finley, 708 F. Supp. 906, 909 (N.D. Ill. 1989) ("[A]s a general matter of relevance, a person who does not testify at trial and who is not the source of statements admitted for their truth is not subject to impeachment."). The Court agrees that the grand jury transcript was not Brady material and therefore no violation occurred with regard to the delayed disclosure.

As to the phone records and corresponding oral narrative, the government also contends that no Brady violation occurred. According to the government, it did not receive Crowder's phone records until two days before trial. Upon investigation into the records and discussions with the DEA agents assigned to the case, the government discovered that subsequent to his arrest, Crowder made a phone call to his contact in Arizona in an attempt to cooperate with the investigation. Because the government did not receive the information regarding Crowder's attempted cooperation until the eve of trial, it did not introduce the evidence at the bench trial. As the information about Crowder's attempted government cooperation was in fact inculpatory, not exculpatory, no Brady violation occurred in the government's last minute disclosure. Therefore, to the extent that Crowder's Brady claim is not procedurally defaulted,[4] the Court finds that no violation occurred.

### D. Claim Raised on Direct Appeal

Finally, Crowder argues that his pre-trial motion to suppress was improperly denied in "violation of [his] Constitutional Rights because the Court's decision was based on false testimony." Grounds for Mot. 10. Once the information was corrected,

---

[4] On direct appeal, the Seventh Circuit specifically indicated that Crowder failed to argue "that these late disclosures constituted a Brady violation." Crowder, 588 F.3d at 933 n.4.

however, the Court found that the minor factual errors presented during the grand jury and pretrial proceedings did not affect its decision to deny the motion to suppress as there was still ample evidence to support the Court's finding. Furthermore, the Court's decision to deny the motion to suppress was affirmed on direct appeal. Crowder, 588 F.3d at 936. A § 2255 motion cannot raise "issues that were raised on direct appeal, absent a showing of changed circumstances." Belford, 975 F.2d at 313. On direct appeal, the court noted the misstatements that were corrected prior to trial, stating "[t]he district court reiterated in its order denying Crowder's motion for a new trial that the absence of the dog sniff would not have altered the district court's denial of Crowder's motion to suppress or the court's finding that Crowder was guilty as charged." Crowder, 588 F.3d at 932 n.3. Crowder does not allege any changed circumstances that would allow him to re-argue this issue on collateral review. Accordingly, the Court rejects Crowder's argument.

## III. CONCLUSION

For the foregoing reasons, Crowder's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied. The Court denies a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 15, 2012